UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

| | |
|---|---|
| In Re: DANIEL SACHKOWSKY,<br>　　　　　Debtor. | Case No. 19-20512 (MBK)<br><br>Chapter 7 |
| Buterick Bulkheading, Inc.,<br>　　　　　Plaintiff,<br>　　v.<br>Daniel Sachkowsky,<br>　　　　　Defendant. | Adv. Pro. No. 19-02271 (MBK) |

**Richard P. Coe, Esq.**
Weir & Partners, LLP
20 Brace Road, Suite 200
Cherry Hill, NJ 08034
*Counsel for Plaintiff Buterick Bulkheading, Inc.*

**Timothy Neumann, Esq.**
**Geoffrey P. Neumann, Esq.**
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, NJ 08736
*Counsel for Debtor-Defendant Daniel Sachkowsky*

## MEMORANDUM DECISION

This matter comes before the Court upon the Complaint filed by Plaintiff, Buterick Bulkheading, Inc. ("Plaintiff" or "Buterick"). As set forth below, the Complaint objects to the discharge of debt owed to Buterick by Defendant, Daniel Sachkowsky ("Defendant" or "Debtor") under 11 U.S.C. § 523(a)(2)(A) and (B).

The Court conducted the trial in this matter on September 30, 2021 via virtual means. Throughout the trial, the Court accepted several exhibits into evidence and heard testimony from

Fred Soper and Paul Buterick—the current and former Vice President of Buterick, respectively—as well as testimony from the Debtor. For the reasons expressed below, the Court grants judgment in favor of the Debtor. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II. Background and Procedural History

Buterick is a New Jersey corporation that performs piling work for commercial and residential construction projects. Buterick agreed to perform subcontracting work for Axis Builders, LLC, which is the predecessor to Axis Builders Inc., the now-defunct entity that the Debtor owned and operated. It is undisputed that Axis Builders, Inc., as successor to Axis Builders, LLC (collectively, "Axis") is liable for its debts and obligations, including payment for the subcontracting work performed by Buterick. The Debtor testified at trial that at the time he purchased Axis, he was unaware of the extent of the company's debt. In fact, Axis owed a significant amount of money to various entities, including Buterick.

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

2

The Account Statements offered by Plaintiff and admitted into evidence as Exhibit P-2 describe the outstanding balances owed by Axis to Buterick for work performed at five separate properties. As part of the work it performed, Buterick agreed to provide "piling certifications." Plaintiff alleges—and undisputed testimony at trial establishes—that in order for builders like Axis to obtain building code approval and a certificate of occupancy for a house built on pilings, the builder must present a piling certificate to the municipal code officials. Testimony at trial also established that it was customary for Buterick to release the piling certificates only *after* it received payment from a client. Because Axis was delinquent in payments, Buterick initially withheld the piling certificates. Eventually, the parties met to discuss Axis' debt, with the Debtor and Paul Buterick in attendance. During this meeting, Axis, through the Debtor, negotiated for the release of certain piling certificates (the "Piling Certificates"). Copies of these Piling Certificates were offered by the Plaintiff and admitted into evidence as Exhibit P-4. Specifically, the Debtor represented during the meeting that the release of the Piling Certificates to Axis would result in income to Axis because it would permit Axis to finish, and receive payment for, certain existing projects. In exchange for the Piling Certificates, the Debtor promised to make monthly payments to Buterick. The Debtor testified at trial that he was telling the truth at the meeting relative to his intentions and that he believed he could "turn the company around" and make good on his promise to pay Buterick. The Debtor memorialized his promise in a letter dated September 16, 2015, which Plaintiff had notarized. Plaintiff offered this letter at trial and it was admitted into evidence as Exhibit P-5.

After signing this letter, Axis received money into its savings account. Axis' Wells Fargo bank statements—offered into evidence and admitted as Exhibit D-A—reflect that Axis received more than $34,000 and made multiple disbursements, including transfers to its checking account and cash withdrawals. Nevertheless, Axis did not make any payments to Buterick. Buterick initiated a state court proceeding alleging fraud against Axis and the Debtor. On April 10, 2018, Buterick obtained a judgment by way of default (the "Judgment") against Axis and the Debtor in the amount of $58,941.00. The Debtor then filed for bankruptcy under chapter 7 of the Bankruptcy Code.

The Plaintiff initiated the instant adversary proceeding on November 19, 2021. In the Complaint, the Plaintiff asks that the damages and Judgment owed by Axis to Buterick be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). Specifically, Buterick asserts that the Debtor's conduct amounts to "false pretenses, false representations, and/or actual fraud" sufficient to preclude discharge under § 523(a)(2)(A). Additionally, Buterick contends that the Debtor used "a materially false written statement to fraudulently obtain the piling certifications, communicated with an intent to deceive Buterick," rendering the debt nondischargeable under §523(a)(2)(B). For the reasons set forth below, the Court declines to preclude discharge under these sections and grants judgment in favor of the Debtor.

### III. Legal Discussion

Buterick has not demonstrated the intent necessary to succeed under either § 523(a)(2)(A) or § 523(a)(2)(B).

**A. Standard for a Claim Under § 523(a)(2)(A)[2]**

Section 523 of the Bankruptcy Code provides that:

a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, . . . or credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud" are not explicitly defined in the Code; nevertheless, the Supreme Court has dictated that "[t]hey are common-law terms, and . . . imply elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69, 116 S. Ct. 437, 443, 133 L. Ed. 2d 351 (1995); *see also Molz v. Price*, 613 B.R. 599, 603 (Bankr. D.N.J. 2020). Among these three grounds for nondischargeability, courts in this Circuit often distinguish between "false pretenses" and "false representation" based on whether the debtor's misrepresentation was implied—indicating "false pretense"—or express—indicating "false representation." *See, e.g.*, *In re Williams*, No. 15-23287, 2018 WL 3344174, at *14 (Bankr. D.N.J. July 5, 2018) (collecting cases); *In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *21 (Bankr. D.N.J. Jan. 31, 2018); *In re Witmer*, 541 B.R.

---

[2] Ordinarily, in cases involving a debtor-contractor—such as the case presently before this Court—courts in this Circuit employ a unique test for determining whether misrepresentation or fraud has been established under §523(a)(2)(A). *See Molz v. Price*, 613 B.R. 599, 604 (Bankr. D.N.J. 2020) (collecting cases and setting forth standard for establishing a nondischargable debt under § 523(a)(2)(A) in cases involving a debtor-contractor). However, this case does not involve the typical debtor-contractor dilemma wherein a debtor failed to perform construction services, under-performed on construction services, or misrepresented a material fact regarding his or her qualifications. Rather, this case is more akin to a common contract dispute: Buterick provided the Piling Certifications in exchange for the Debtor's promise to pay and the Debtor failed to make good on his promise. Importantly, all of the services performed by Plaintiff—apart from providing the Piling Certificates, for which payment has been demanded—occurred prior to any alleged false representations by the Debtor.

769, 778 (Bankr. M.D. Pa. 2015). The third cause of action under § 523(a)(2)(A), "actual fraud," is defined by the elements of common law fraud. *See Field v. Mans*, 516 U.S. at 443-444; *In re Williams*, 2018 WL 3344174, at *14.

Courts have noted that "[a]lthough the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate proof of false or deceptive conduct, fraudulent intent, and justifiable reliance." *In re Altieri*, No. 11-12819, 2012 WL 3595298, at *2 (Bankr. D.N.J. Aug. 20, 2012) (internal quotations and citations omitted); *see also In re Chung-Hwan Kim*, 2018 WL 671467, at *22. Accordingly, courts generally require that a movant prove some variation of the following elements in order to establish fraud of any type under § 523(a)(2)(A):

(1) the debtor obtained money, property or services through a material misrepresentation;

(2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;

(3) the debtor intended to deceive the creditor;

(4) the creditor justifiably relied on the debtor's false representations; and

(5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.[3]

---

[3] This Court notes that there does not exist in the Third Circuit a singular, universally-used test for proving a claim under § 523(a)(2)(A). However, a close inspection of existing case law reveals that all tests require a movant to fulfill the same basic requirements, and the primary differences between the tests are the number of elements which define the test for establishing a claim. *Compare In re Bocchino*, 794 F.3d 376, 381 (3d Cir. 2015) (five elements) *with In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22 (Bankr. D.N.J. Jan. 31, 2018) (six elements) *and In re Softcheck*, No. 08-23844, 2009 WL 4747527, at *7 (Bankr. D.N.J. Dec. 4, 2009) (ten elements) *and In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd,* 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (five elements). Because the relevant case law agrees as to what is substantively required to prove a claim under § 523(a)(2)(A), the variation in the number of elements does not have any meaningful impact on the analysis in this case, or on the legal analyses performed by other courts that have addressed a §523(a)(2)(A) claim in this Circuit. Rather, the difference in the number of elements appears to be merely organizational. *Compare In re Bocchino*, 794 F.3d at 381 (including the requirements that the debtor "obtained money,

*See Molz v. Price*, 613 B.R. at 603; *In re Gallagher*, 2016 WL 4989942, at *2–3 (Bankr. D.N.J. Sept. 9, 2016).[4] These elements must be established by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991). "Generally, the provisions of section 523(a) are 'strictly construed against creditors and liberally construed in favor of debtors,' owing to the overriding bankruptcy purpose of granting debtors a fresh start." *In re Gallagher*, 2016 WL 4989942, at *2 (quoting *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir. 1995)).

1. **Intent**

The Court first examines whether the Plaintiff has proved by a preponderance of the evidence that the Debtor acted with the intent and purpose of deceiving Buterick. "Because a debtor 'will rarely, if ever, admit that deception was his purpose,' intent to deceive may be inferred from the totality of the surrounding facts and circumstances." *In re Hay Phat*, 623 B.R. 371, 379–80 (Bankr. E.D. Pa. 2021) (quoting *Starr v. Reynolds* (*In re Reynolds*), 193 B.R. 195, 200 (D. N.J. 1996) and collecting cases). It is well established that failure to perform as promised, by itself, gives rise to a cause of action for breach of contract, not actionable misrepresentation, fraud, or

---

property or services" and that there was "a material misrepresentation" in the same element) *with In re Chung-Hwan Kim*, 2018 WL 671467, at *22 (breaking the requirements that the debtor "obtained money, property or services" and that there was a "material representation" into two separate elements).

[4] The Court notes that several courts within our Circuit—including the Third Circuit itself—have described the fourth element of § 523(a)(2)(A) as requiring "reasonable" reliance. *See, e.g.*, *In re Bocchino*, 794 F.3d at 381 (stating that the movant must show that "the creditor reasonably relied on the debtor's false representations" to establish the fourth element of a claim under § 523(a)(2)(A)); *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (same). However, the Supreme Court has clearly articulated that the type of reliance required to establish fraud under § 523(a)(2)(A) is "justifiable" reliance, which is a lower threshold than "reasonable." *Field v. Mans*, 516 U.S. 59, 74–75, 116 S. Ct. 437, 446, 133 L. Ed. 2d 351 (1995) ("[W]e hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance.").

7

false pretenses under § 523(a)(2)(A). *See, e.g*, *In re Hay Phat*, 623 B.R. at 380; *In re Williams*, 2018 WL 6132308, at *6; *In re Witmer*, 541 B.R. at 779. Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability. *In re Williams*, 2018 WL 6132308, at *6 (citing *In re Giquinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008)).

Here, the record does not establish by a preponderance of the evidence that the Debtor possessed an intent to deceive. The Debtor testified at trial that he was telling the truth when he represented at the meeting that he intended to pay Buterick. The Debtor further explained that, at the time he made the promise to pay, he believed he could "turn the company around" and was attempting to do so by bringing in more business and completing existing projects, something he could only accomplish if Buterick released the Piling Certificates. The Court perceived the Debtor as a credible witness. The totality of the circumstances indicate that this case involved a struggling company—one that had more problems and more debt than the Debtor realized when he acquired it. The Debtor's actions are consistent with a company-owner who is trying to keep the business afloat. It is undisputed that the Debtor needed the Piling Certificates to finish existing projects and generate income, which he could then use to pay old debts. Despite the Debtor's efforts, the business ultimately failed and went into bankruptcy. This fact-pattern does not establish an intent to deceive, but rather—as Counsel for the Debtor characterized it—"a case of broken promises."

Buterick argues that the Debtor's intent to deceive can be inferred from circumstantial evidence. Specifically, Buterick points to the fact that the Debtor had a strong incentive to obtain the Piling Certificates and that he did not make any good-faith payments even though money came

into the Axis bank account. Buterick also alleges that the Debtor threatened physical violence when Buterick attempted to collect on the debt and Plaintiff asserts that the Debtor's testimony at trial was not credible. The Court will address each argument in turn.

As an initial matter, the Court accepts that the Debtor was incentivized to obtain the Piling Certificates. However, incentive does not amount to deceptive intent. The fact that the Debtor wanted—or even *needed*—the Piling Certificates to complete and collect on existing projects does not demonstrate by a preponderance of the evidence that he made knowingly false representations regarding his intent to pay Buterick for those Piling Certificates. As stated above, it is more likely that the Debtor intended to make good on his promise, but was simply unable to generate sufficient income in order to do so.

The record demonstrates that tens of thousands of dollars flowed through the Axis bank account after the Debtor memorialized his promise to pay Buterick in the September 16, 2015 letter. *See Exhibit D-A* (Wells Fargo bank statements); *Exhibit P-5* (notarized letter). The Debtor conceded that, despite his promise, he did not make any payments to Buterick after the letter was signed. Moreover, the bank statements reflect several transfers to the Axis checking account and multiple cash withdrawals. However, it was not established at trial precisely for what purposes the transferred or withdrawn funds were used. The Court finds that this record—even when viewed in conjunction with the surrounding circumstances—does not demonstrate by a preponderance of the evidence that the Debtor never intended to pay Buterick. Rather, it appears that the withdrawn or transferred funds were used to pay Axis' other debts or expenses. Indeed, certain transactions in the bank statements contain notations indicating the purpose of the transfer. *See, e.g., Exhibit*

*D-A* at 17 (December 2015 statement with notations for "payroll," "materials," or "painter"). The record is clear that Axis was a struggling company with significant debt. Often, struggling companies must choose which of their multiple creditors should receive payment. The record demonstrates that Axis attempted to pay certain debts, which cuts against Buterick's argument.

Admittedly, as the Debtor testified at trial, Axis was not able to pay Buterick. However, the fact that the Debtor received money and did not pay Buterick—even assuming he may have made payments to creditors other than Buterick—does not establish that the Debtor had no intent to make good on his promise to pay Buterick. Once again, it merely evidences a broken promise. As set forth above, a failure to perform as promised, by itself, does not amount to actionable misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *See, e.g*, *In re Hay Phat*, 623 B.R. at 380. Significantly, both Axis and the Debtor eventually filed for bankruptcy and the Debtor's schedules contain a long list of creditors that he similarly failed to pay. If each of these creditors could establish nondischargeability as a result of the Debtor's failure to comply with his contractual undertaking, then almost all of the Debtor's debts would be nondischargeable—thus, defeating the purpose of his bankruptcy.

Buterick's allegations regarding the Debtor's threat of physical violence—even if taken as true—do not establish by a preponderance of the evidence that the Debtor had no intent to pay Buterick at the outset. The testimony given at trial alleges that in response to Fred Soper's pursuit of Axis' debt, the Debtor indicated to Paul Buterick via a text message that he would "break his thumbs." No record of that text message was presented as evidence. The Debtor neither denied nor admitted making this statement during trial. Instead, he testified that he did not recall sending

that message, but stressed that he did not believe he sent it because it would have been "out of character." Plaintiff contends that the fact that the Debtor does not recall making the statement demonstrates that his testimony is not credible. The Court does not agree. The Debtor could have easily denied the statement. Instead, he testified that he was frustrated with Fred Soper because Mr. Soper was "difficult and aggressive" and because "he was bad-mouthing [the Debtor's] company on social media." Thus, the Debtor left the door open to the conclusion that he, in fact, made the threat. However, even assuming the Debtor made the threat, it does not relate back to the time he made the promise to pay, nor does it evidence an intent to deceive at that time. While not condoning the statements, the Court concludes that the threats—which were made subsequent to the promise to pay—were a result of frustration with dealing with a floundering company, mounting debt, and aggressive creditors.

In sum, the totality of the circumstances do not suggest that the Debtor intended to deceive Buterick. The Plaintiff has not met its burden of proving the element of intent by a preponderance of the evidence; therefore, its claim under § 523(a)(2)(A) fails. This conclusion is consistent with the liberal construction of § 523(a) in favor of debtors that is compelled by Third Circuit case law. *See, e.g.*, *In re McCabe*, 856 F. App'x 430, 431 (3d Cir. 2021) (citing *In re Cohn*, 54 F.3d at 1113 and holding that exceptions to discharge are to be construed liberally in favor of debtors).

### B. Standard Under § 523(a)(2)(B)

Under § 523(a)(2)(B), an individual debtor is not discharged from any debt,

>(2) for money, property, services, or an extension, renewal, or refinancing of credit,
>    to the extent obtained by—
>        (B) use of a statement in writing—
>            (i) that is materially false;

        (ii) respecting the debtor's or an insider's financial condition;
        (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
        (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. §523(a)(2)(B). The plaintiff has the burden of proving a § 523(a)(2)(B) claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S. Ct. 654, 658–59, 112 L. Ed. 2d 755 (1991). To succeed, the plaintiff must show that the writing: (1) is materially false; (2) respects the debtor's financial condition; (3) was reasonably relied on; and (4) was made with intent to deceive. *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995). "The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start. [In that spirit] [e]xceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Cohn*, 54 F.3d at 1113; *see also In re Williams*, 2018 WL 3344174, at *14.

As an initial matter, the Court maintains serious doubts as to whether the promise to pay memorialized in the September 16, 2015 letter constitutes the type of "statement in writing . . . respecting the [Debtor's] financial condition" contemplated by § 523(a)(2)(B). *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759, 201 L. Ed. 2d 102 (2018) (discussing the meaning of the phrase "statement respecting the debtor's financial condition" as it is used in § 523(a)(2)(B)). The Court declines to address this issue, however, because the Plaintiff's claim under § 523(a)(2)(B) fails for the same reasons previously discussed. Specifically, the Court determines that the Plaintiff has not shown by a preponderance of the evidence that the Debtor possessed the

requisite "intent to deceive." Accordingly, the Plaintiff's claim under § 523(a)(2)(B) is likewise denied.

### C. Damages and Proximate Cause

The Court notes that the parties disputed at trial whether the Plaintiff had established the requisite nexus between Buterick's loss and the Debtor's alleged fraud. Indeed, an essential element of a claim under § 523(a)(2)(A) is that the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations. *See Molz v. Price*, 613 B.R. at 603. Similarly, to succeed in a claim under § 523(a)(2)(B) a plaintiff must show that the debt in question was obtained by a materially false statement in writing on which the creditor reasonably relied. *See In re Cohn*, 54 F.3d at 1115. In this case, Buterick had already performed and completed over $58,000 worth of subcontracting work by the time the Debtor made the promise to pay memorialized in the September 16, 2015 letter. *Exhibit P-5*. Thus, the Debtor's promise—which is the crux of the Plaintiff's Complaint—did not induce Buterick to perform any additional services and incur damages. Moreover, the Invoices offered by Plaintiff at trial and admitted into evidence as Exhibit P-3 reflect that the average charge for a Piling Certificate is $397.[5] Thus, assuming that the Debtor received the Piling Certificates for all five properties in question, the total amount of the debt directly attributable to those Certificates equals no more than $1,985,

---

[5] The Court reached this figure by averaging the cost of the Piling Certificates using the undisputed figures in the Invoices as follows: $250 for the piling certificate for the property located at 123 E. Sand Dune Drive; $585 for the piling certificate for the property located at 258 Neptune Circle; $650 for the piling certificate for the property located at 40 Muriel Drive; $250 for the piling certificate for the property located at 57 Rogers Ave; and $250 for the piling certificate for the property located at 8 E. Texas Ave. *Exhibit P-3*.

which is significantly less than the $58,941 that Buterick seeks to except from discharge by way of this adversary proceeding.

The Plaintiff argues, however, that it was the *release* of the Piling Certificates that represents the damage and loss. Counsel for Buterick explained that the Piling Certificates "are like gold" because no further construction can occur until such time as the Piling Certificates have been presented to the municipal code official. Thus, if a contractor fails to pay, Counsel for Buterick explained that a property-owner or other interested party might step forward and pay the contractor's outstanding balance to ensure the piling certificate's release. Witness Paul Buterick also explained this process. The record was not clear, however, as to what amount a third party would have to pay to induce Buterick to release a piling certificate: The relatively small charge for the piling certificate itself? Or the entire outstanding balance for that particular project? Additionally, the record was not clear as to the likelihood of a third party coming forward to satisfy the significant outstanding obligations owing Buterick.

Ultimately, the Court need not decide damages or resolve the issue of causation[6] between the Debtor's alleged fraud and Buterick's loss. As set forth above, the Plaintiff has not shown the

---

[6] The Supreme Court clarified that an "element of causation [is] inherent in the phrase 'obtained by,'" as it is used in § 523(a)(2). *Field v. Mans*, 516 U.S. at 66. However, this Court's research was not conclusive regarding whether a plaintiff must show "proximate cause" to succeed in a claim under § 523(a)(2)(B). At least one other court in this district noted "a split in the caselaw as to whether a § 523(a)(2)(B) plaintiff need prove the element of loss and damage as the proximate result of the debtor's presentation of a false financial statement to the plaintiff." *In re Johnson*, 242 B.R. 283, 292 (Bankr. E.D. Pa. 1999) (collecting cases). "The majority of courts, particularly appellate courts, hold that a separate damages requirement is not necessary for a claim under § 523(a)(2)(B), relying on the plain words of the statute which does not include a damages requirement." *In re Anzo*, 547 B.R. 454, 471 (Bankr. N.D. Ga. 2016) (collecting cases). This Court declines to weigh in on this issue. Because the Court finds that the Plaintiff has not met its burden of establishing intent under the statute, its claim fails and the Court need not reach the thorny issue of causation under § 523(a)(2)(B).

intent to deceive necessary to support a claim under either §523(a)(2)(A) or (B) and the Complaint fails.

### IV. Conclusion

For the aforementioned reasons, the Plaintiff's Complaint is denied in its entirety and the Court rules in favor of the Debtor. The Court will enter an appropriate Order.

*Michael B. Kaplan*
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: October 15, 2021